# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRY BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  03 C 2117 |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) HONORABLE DAVID H. COAR |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Terry Bell ("Bell") sued the City of Chicago for sex discrimination, hostile work environment sexual harassment, and retaliation under Title VII, 42 U.S.C. § 2000 *et seq*. The complaint arose from allegedly discriminatory treatment Bell experienced at the City's Department of Public Health Uptown Clinic between 1999 and 2002. This Court granted summary judgment to the City on Bell's sex discrimination and retaliation claims. After a three day trial, the jury entered a verdict in favor of Bell and awarded her $150,000 in compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and stress, if any." The City now renews its motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. In addition, the City moves for a new trial on the issue of damages or, in the alternative, remittitur of damages to $50,000.

**City's Motion for Judgment as a Matter of Law**

The City renews its Rule 50 motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In deciding the motion, the court will consider "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.... In other words, [the court is] limited to assessing whether no rational jury could have found for the plaintiff." *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 629 (7th Cir. 1996). The court "may not step in and substitute its view of the contested evidence for the jury's." *Id.* at 634.

In order to prevail on her Title VII claim against the City, Bell had to prove by a preponderance of the evidence that: (1) she was subject to unwelcome sexual harassment such as sexual advances, requests for sexual favors, or other physical or verbal conduct that was sexual in nature; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Because the alleged harasser was one of Bell's co-workers and not a supervisor, Bell had to show that the City knew or should have known about the harassment; or that the City failed to take reasonable steps to discover and rectify the harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). But the City's emphasis on the elements of Bell's *prima facie* case misses the mark. After a jury trial,

the relevant question is whether there was sufficient evidence to permit a reasonable jury to find that Bell was subjected to sexual harassment at the Uptown Clinic. *See Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 708 (7th Cir. 2004) (citing *Hall v. Gary Cmty. Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002)).

The City contends that the evidence at trial failed to establish that the alleged harassment was sufficiently severe or pervasive to create a hostile work environment. Rather, the evidence demonstrated that several of Bell's co-workers, including Fred Woods, openly disliked her. The City also contends that Bell did not show that the City knew or should have known about the harassment or that it failed to take reasonable steps to discover and rectify the harassing behavior. Although Bell testified that she repeatedly reported the rude and offensive language Fred Woods used to her and in reference to her to her direct supervisor, Osagie Igbinosun, the City argues that these reports failed to put Bell's employer on notice of sexual harassment. First, the City alleges that Igbinosun was not a "supervisor" for the purposes of Title VII because he did not have the authority to hire, fire, demote, promote, transfer, or discipline his employees. Second, the City contends that Bell did not complain to Igbinosun that she was being harassed because of her sex. Instead, she complained generally about rude and obnoxious language and behavior in the workplace. According to the City, there was no reason for Igbinosun to realize the behavior was sexually harassing or was motivated because of Bell's sex, despite the sexual and gendered connotations of much of the language allegedly used. Bell made at least two Violence in the Workplace complaints, which were promptly investigated. The City contends this demonstrates that it responded to complaints when they were made, and that the lack of response to Bell's alleged complaints to Igbinosun illustrates, by inference, that she did not

complain of sexual harassment. In addition, when Bell did file a complaint with the City's Sexual Harassment Office in January 2002, that office opened a file and launched an investigation immediately.

In her response brief, Bell asserts that the "jury made a reasonable decision to find that Plaintiff was subjected to a hostile work environment," repeats the elements of the sexual harassment claim, and then pronounces the jury's decision reasonable. In response to the City's argument that Igbinosun was not a "supervisor" as defined in Title VII, Plaintiff argues that Igbinosun "turned a blind eye" to the problems between Bell and Woods, which establishes that he should have known of the alleged sexual harassment. Bell then recites the definition of "supervisor" given in the National Labor Relations Act, 29 U.S.C. § 152, but provides absolutely no explanation of why this definition is relevant or should supersede Seventh Circuit case law construing "supervisor" under Title VII. Plaintiff then rehashes the trial testimony and argues that sexual harassment is evaluated based on the "totality of the circumstances," including the pervasiveness and severity of the alleged harassing conduct, and whether it is threatening and humiliating or merely offensive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). According to Bell, the jury appropriately evaluated the evidence and came to a reasonable verdict in light of it.

At trial, Bell testified that Woods called her "bitch," "motherfucking bitch," "whore," and "dyke" repeatedly, told her that she "didn't have a pot to piss in" and said, in front of Clinic staff, that she was "fucking a TB patient." In addition, Bell testified that Woods rammed her with his shoulder into the office wall so hard on one occasion that she was bruised. Priscilla Edwards, a co-worker from the Uptown Clinic, testified that Woods called Bell a "bitch" and a "dyke"

"every day." By contrast, Woods, Pamela Crowder, Anthony Garcia and Osagie Igbinosun testified that Woods never called her names or used offensive language to her, but that Bell regularly used swear words and sexually explicit language in the workplace. The testimony, although by no means overwhelming, was sufficient that a jury could reasonably have found that Bell was subjected to conduct that was based on her sex. The evidence turned on credibility determinations with respect to the witnesses, all of whom had strikingly one-dimensional recollections of the work environment at the Uptown Clinic, which are uniquely the province of the jury.

Indeed, the crux of the City's motion is whether there was sufficient evidence for a reasonable jury to find that Bell's employer knew or should have known about the alleged harassment or failed to take reasonable steps to discover and rectify it. Bell's argument that Igbinosun should be considered her supervisor has a common-sense appeal: he was her day-to-day superior and the person to whom she brought complaints about workplace problems. But the testimony at trial established that Igbinosun lacked authority to hire, fire, promote, demote, or transfer the employees who reported to him. He had a limited ability to discipline employees by giving them verbal and written reprimands and participating in a disciplinary process with their union representatives. His testimony did not explain what kind of supervisory role he played over his staff and how involved he was in determining their assignments and work duties. On a weekly basis, he held a staff meeting for all the field staff at the Uptown Clinic. Each year, he conducted performance evaluations of staff members. From the testimony at trial, it was apparent that the work space at the Uptown Clinic was small and that employees, including supervisors, worked in very close proximity to one another when they were on site. Igbinosun testified that he

saw his staff members on a daily basis. With respect to Bell's problems at the Uptown Clinic, Igbinosun testified that Bell filed three Violence in the Workplace incident reports, but that only one involved Fred Woods; the others related to other employees. He also testified that she did not tell him she had a problem with Woods. Bell's testimony, by contrast, was that she complained to Igbinosun about Woods at least once a week and sometimes more often.

The City argues that at all relevant times it had a sexual harassment policy which required employees to notify the City's Sexual Harassment Office or their supervisors if they were being sexually harassed. As a general matter, the law will not consider an employer to have notice of the harassment "unless the employee makes a concerted effort to inform the employer that a problem exists." *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999). When an employer has a designated channel or "point person" for harassment complaints, "this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Parkins*, 163 F.3d at 1035. Bell admitted that she had received a copy of the City's employee handbook and that she had signed an acknowledgment form, specifically stating that she had received a copy of the City's sexual harassment policy. Thus, under the City's policy, Bell was obligated to notify either her supervisor or the City's Sexual Harassment Office about the alleged sexual harassment. Bell contends that she informed Igbinosun about Woods' harassing conduct towards her. Igbinosun testified that Bell did not tell him she was being harassed by Woods or even, incredibly, that she had a problem with Woods. Certainly Igbinosun did not forward any of Bell's complaints to the City's Sexual Harassment Office, as he was required to do within 24 hours if an employee alleged that he or she was being sexually harassed.

An employer can be considered to have "constructive notice," however, if the harassment was sufficiently obvious. *Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1046 (7th Cir. 2000). "It would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee. But if it knows or should have known that one of its female employees is being harassed, yet it responds ineffectually, it is culpable." *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994). Here, the case turned on questions of witness credibility. There is no dispute that when Bell contacted the City's Sexual Harassment Office in January 2002, her allegations were promptly investigated. The dispute centers, rather, on whether Bell's alleged complaints to her supervisor, Igbinosun, between 1999 and 2002 were sufficient to put him on notice–and trigger his reporting obligation under the City's sexual harassment policy–that she felt she was being sexually harassed by Woods.

The City's argument essentially is that the Uptown Clinic was an unpleasant place to work because the employees actively and openly disliked Terry Bell, who had a tendency to tell other people how to do their jobs, but that this unfriendly environment did not qualify as a hostile work environment *on the basis of Terry Bell's sex*. But this is the same argument the City made at trial and the jury rejected. This Court will not replace the jury's credibility determination with its own, just because it might have come to a different conclusion. The City is unhappy with the outcome of the trial, as well it might be. The solution, however, is not a motion for judgment as a matter of law. Rather, the defendant could have put together stronger, more cogent arguments and supporting evidence at every stage of this litigation. The same holds true for Plaintiff.

The City's Motion for Judgment as a Matter of Law is denied.

**Defendant's Motion for New Trial or for Remittitur of Damages**

The City moves, in the alternative, for a new trial on the issue of damages[1] or for remittitur of the jury award. It argues that it is entitled to such relief because the jury's award of $150,000 in compensatory damages is "monstrously excessive" and lacks any rational connection to the evidence presented at trial.

In order to grant a new trial, a court must find that the verdict was against weight of the evidence, the jury awarded excessive damages, or the trial was not fair to the moving party. *See Gen'l Foam Fabricators, Inc. v. Tenneco Chem., Inc.*, 695 F.2d 281, 288 (7th Cir.1982). If the court finds that damages are excessive, the proper remedy is remittitur rather than a new trial. The court will order a new trial only if the plaintiff refuses to accept the remittitur. *See Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir.1986). Because sexual harassment cases are so fact intensive and witness credibility is such a crucial issue, a court will "overturn a jury verdict for the Plaintiff only if ... 'no rational jury could have found for the plaintiff.'" *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1043 (7th Cir.2000) (citation omitted). As previously discussed, this Court declines to find that the verdict was against the weight of the evidence.

When considering whether to reduce an award of compensatory damages, courts generally weigh three factors: 1) whether the award is "monstrously excessive"; 2) whether the award has a "rational connection" with the evidence; and 3) whether the award is "roughly

---

[1] Because only compensatory damages are available in this case, a new trial would only go to that issue.

comparable to awards made in similar cases." *Deloughery v. City of Chicago*, 422 F.3d 611, 619 (7th Cir. 2005) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003)). The Seventh Circuit has characterized the "monstrously excessive" factor as "simply ... another way of asking whether there is a rational connection between the award and the evidence." *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713-14 (7th Cir. 2004).

At trial, Bell's psychiatrist, Dr. Robert Marquis, testified that he saw Bell on a weekly or biweekly basis from August 1998 until approximately April 2001 and from September 2002 until some time in 2003. According to Dr. Marquis, Bell initially came to him because of depression relating to a car accident and generalized anxiety about work problems. In addition, Bell was having anxiety about her son's serious legal problems at the time, her daughter's pregnancy, and her own health and financial circumstances. Dr. Marquis testified that Bell had identified her problems at work as stemming from unpopular positions she took about standards of care and treatment by licensed professionals as opposed to paraprofessionals, which caused her co-workers to dislike her and led to disagreements and confrontations. Bell never complained to Dr. Marquis about sexual harassment or indicated that she was being sexually harassed. In addition, Bell did not see Dr. Marquis at all for an eighteen-month time period, during which she claimed the more serious incidents occurred. Further, Bell's testimony was that Woods called her names, used rude and obscene language to her, lost his temper and yelled at her regularly, and that he rammed her with his shoulder on one occasion. The names included "bitch," "dyke," "motherfucking bitch," "motherfucking dyke," "stupid ass bitch." Bell also alleged that Woods told her that she "didn't have a pot to piss in or a window to throw it out of." Priscilla Edwards, a

co-worker from the Uptown Clinic, testified that Woods called Bell names like "nappy headed bitch," "big fat black booger bear," "airhead," and "motherfucking bitch."

Bell argues that the testimony from Dr. Marquis, Edwards, and Plaintiff amply demonstrated that the Uptown Clinic was a hostile work environment and established the severe stress and emotional harm it caused Bell. She claims that her testimony showed the ongoing harassment she experienced from Fred Woods and the negligence and indifference displayed by Osagie Igbinosun towards the out-of-control work environment in the clinic. In her testimony, Bell stated that Woods' name-calling made her feel angry, upset, cheap and helpless, and that sometimes she felt "like dying."

Defendant contends that the jury's compensatory damages award is out of line with awards in similar cases. As illustration, it provides a table of several recent cases, the claims presented, the jury award, and whether that award was reduced. This Court has reviewed these cases, among others. In *Deloughery v. City of Chicago*, 422 F.3d 611 (7th Cir. 2005), Dolores Deloughery, a Hispanic woman, sued the City for retaliation when she was denied a promotion within the police department where she had been an officer for approximately twenty years after she filed complaints about sex and national origin discrimination. The jury heard testimony about Deloughery's involvement in the Chicago Police Women's Association, an organization which sought to give voice to the concerns of women working in the CPD, and plaintiff's efforts to inform CPD Superintendent Terry Hillard that she and other group members believed they were being penalized for their participation in CPWA. After Deloughery was passed over for two successive promotion classes, she sued. A jury awarded Deloughery $250,000 in compensatory damages for mental and emotional suffering, plus back and front pay. On review of post-trial

motions and awards in comparable cases, the district court reduced the compensatory damages to $175,000. The Seventh Circuit upheld this reduced award, noting that there was sufficient factual evidence to support some award, but that the district judge did not abuse his discretion in remitting the jury's initial award. 422 F.3d at 620-21.

The Seventh Circuit also upheld a remitted compensatory damages award in *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003), a retaliation case. Lori David was refused five different promotions because her supervisor allegedly told her no woman would ever be promoted in the security department. She filed a sex discrimination complaint, and was then passed over for an unposted promotion–about which she was not even informed–in favor of another woman who reportedly had not expressed interest in promotion. *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003). The district judge found the jury's award of $100,000 in compensatory damages to be "excessive ... for the embarrassment, disappointment, inconvenience, and frustration" experienced as compared to "comparable, and arguably more egregious, cases." *David*, 324 F.3d at 864. Bell contends that *David* differs because the *David* jury awarded both compensatory and punitive damages in excess of a statutory cap under 42 U.S.C. § 1981. But a review of the case reveals that only the punitive damages were affected by the statutory cap. The district judge remitted the compensatory damages because the evidence failed to support the jury award. 324 F.3d at 864-65.

In *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558 (7th Cir. 2006), the plaintiff alleged that she had been continually sexually harassed by the officers of the bank where she was employed over an eighteen-month period. According to the trial testimony, the bank officers told her they wanted to "fuck" her, asked her to "sit on my face," touched her

inappropriately and tried to kiss her, and made numerous comments about her marital status and Greek heritage. Although the plaintiff did not see a doctor about any stress or unhappiness resulting from the harassment, one of her friends testified that she become "very depressed." The plaintiff testified that she lost self-esteem, gained weight, became nervous and had difficulty sleeping. The jury awarded plaintiff Farfaras $100,000 for loss of dignity, humiliation, and emotional distress; and $100,000 for pain and suffering against the three individual defendants.[2] 433 F.3d at 563. The district court refused to reduce the compensatory damages award against the individual defendants, finding that it was not "monstrously excessive" and was "rationally related to the evidence presented." *Farfaras v. Citizens Bank & Trust of Chicago*, 2005 WL 670523, at *4 (N.D. Ill. Mar. 21, 2005). The Seventh Circuit upheld the district court's decision, reiterating that "[m]edical support is not necessary to prove emotional injury in a Title VII case." *Farfaras*, 433 F.3d at 566 (citing *David v. Caterpillar, Inc.*, 185 F. Supp. 2d 918, 923 (C.D. Ill. 2002)).

In the case before this Court, Bell testified that she suffered emotional pain and suffering as a result of her work environment and interactions with Woods. Her psychiatrist testified that she expressed feelings of depression and anxiety relating to work, although he stated that he thought some of her problems related to the fact that she took politically unpopular positions about work-related matters. Bell and Edwards testified that Woods called Bell rude or obscene names on a daily basis. Woods, Garcia, Igbinosun and Crowder denied that Woods harassed Bell

---

[2] The jury also awarded $100,000 in punitive damages, and $200,000 in damages against the bank for humiliation and emotional distress. *Farfaras*, 433 F.3d at 563. The district court reduced the damages award against the bank to $50,000 pursuant to the statutory maximum for a business of that size. *Id*.

or ever used rude or offensive language towards her. Instead, they testified that Bell disrupted the workplace with sexually explicit language and angry outbursts. In addition, Bell evidently told the Violence in the Workplace coordinator that she believed Fred Woods was homosexual. By comparison with the conduct alleged in *Farfaras*, *David*, and *Deloughery*, this Court finds that the jury award of $150,000 was excessive and not rationally related to the evidence. The City contends that $50,000 is the maximum amount of compensatory damages that a reasonable jury could award. This Court disagrees. There was sufficient testimony and sufficient room for differing credibility determinations that a higher award is supportable. Bell was a longtime employee of the City who alleged that she experienced continuing harassment from a co-worker at the Uptown Clinic. She testified that she complained about her interactions with this co-worker to her supervisor on at least a weekly basis for an extended time period. The evidence suggests that Bell's supervisor and co-workers disliked her and that her supervisor did not pursue her complaints. The fact that an employee is abrasive and disliked by her co-workers does not give them permission to ignore complaints of hostile work environment or evidence of sexual harassment. But the fact that an employee is disliked by her co-workers and that her workplace is unpleasant because they openly express their dislike does not automatically create a Title VII claim. The evidence produced at trial, however, did provide a link between the clear hostility Bell's co-workers felt towards her and harassment because of her sex. Although it is difficult to separate the emotional harm of the harassment from other emotional difficulties in Plaintiff's life, this Court finds that there is sufficient evidence of harm from the harassment in the record to support an award greater than $50,000. The alleged harassment was not comparable with that in cases such as *Fanfaras*, *David*, and *Deloughery*, however, and will not support the

-13-

full amount of the jury award. This Court thus reduces the compensatory damages award to $90,000.

Therefore, this Court will grant the City's motion for a new trial on the issue of compensatory damages only unless Bell accepts, within fourteen days of this order, a reduction of the compensatory damages award to $90,000. This is an amount well within the range of reasonable awards given the circumstances of this case and the limited evidence produced at trial.

**Plaintiff's Motion for Leave to File Petitions for Attorney's Fees and Costs and for Front and Back Pay**

In the concluding paragraph of her response to the City's Motion for Judgment as a Matter of Law, Plaintiff requests that this Court "allow Counsel Leave to file his Petition for Attorney fees in the sum of $69,519.00, a Petition for front pay and back pay for Terry Bell and costs." (Pl.'s Resp. to R.50(b) Mtn., at 9.) This is shoddy legal practice. It is manifestly improper to seek leave to file anything in a response to an opponent's motion. A party seeking to file a motion shall do so in a free-standing motion, properly noticed according to the federal and local rules and any standing orders of the presiding judge. This so-called motion for leave is denied as improperly filed. In addition, as noted in this Court's summary judgment opinion, Plaintiff failed to establish an actual adverse employment action in her summary judgment response or even to raise constructive discharge in her complaint. Instead, she first discussed constructive discharge in her response to the City's motion for summary judgment. This Court refused to consider the constructive discharge argument because it was untimely and improperly raised. *See Bell v. City of Chicago*, slip op., at 26-28 & n.12. Because Bell failed to establish either actual or constructive discharge, she is not entitled to the equitable remedies of reinstatement, or back and

front pay in lieu of reinstatement. *See Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001). Her only remedies are those set forth in 42 U.S.C. § 1981a.–namely, compensatory damages. Thus, Bell cannot seek front and back pay.

**Conclusion**

For the reasons stated above, defendant City of Chicago's motion for judgment as a matter of law is denied, but defendant's motion for a remittitur is granted. Unless plaintiff Bell advises the Court on or before **May 25, 2006** that she accepts a reduction of the compensatory damage award to $90,000, the Court will grant defendant's motion for a new trial on the issue of compensatory damages.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **May 11, 2006**